Alan Jacobus, Plaintiffs' Appellants, Jeffrey Jones v. Shannon Jones A core, this is a basic, simple landslide case. Factually, the Joneses owned downhill property. Uphill property began to slide. That uphill property is owned by somebody else. The uphill property owners had liability insurance. That liability insurer denied any for control or maintenance or remediation of that landslide based on the terms of its policy. As time went on, the insurance company changed course. It stepped in. It volunteered. It began to maintain the landslide, at least in the form of winterizing it or paying for winterization of that. That's the evidence we have at this point without the benefit of discovery, but we know that State Farm paid for remediation or control of that uphill landslide. When the landslide continued, the Joneses sued State Farm not as an insurance company but as the party that was managing that uphill landslide. And if the name of the defendant in this case were State Farm Land Management Company or State Farm Construction Company or State Farm Engineering Company, chances are we wouldn't even be here. So if, was State Farm acting under a reservation of rights? I believe it issued a reservation of rights. Again, we don't have discovery. Would it have made a difference if they had just accepted the claim and then everything that happened after that they continued to do, but would that have been in the ordinary course of what insurance companies do? It wouldn't, Your Honor, because State Farm is a liability insurer. And it insures against the liability that its insurers have to the downhill property owner. It does not have any responsibility for the property itself, and this is the first-party, third-party property distinction. State Farm had no obligation under its contract to do anything on that uphill property, and it stepped in as a volunteer and did so. It looked to me like it was just trying to mitigate any damages it might have to pay on behalf of the uphill property owners that they might owe to the Joneses. But they stepped in and managed the landslide and did so negligently. This is similar to the O'Malley case in the brief where wife calls a hotel, says, can you go check on the husband in the hotel room? The hotel goes in and checks, doesn't find the husband on the floor who'd had a serious medical condition, and the plaintiffs, the husband and wife, sued the hotel, and the hotel said, wait a minute, we don't have anything to do with this. We're kind of doing this as a courtesy to go and check. And the court said, no, at the point that you stepped in and took on that obligation, you took on the obligation to do so in a non-negligent fashion, and that's exactly what happened here. When State Farm came in and began to manage that landslide, it had a duty to protect the downhill landowner, and it didn't do so. Well, I mean, I do think the hotel example is an interesting one, but a little different because it's not an insurance situation. So if we have this case of Teague v. Home Insurance, how do you think that applies here? How would you take Teague's reasoning and apply it to the argument you're now making? Well, Teague said that – talk about Teague. In Teague, there was a claimant on workers' compensation policy. The insurer wanted to investigate the claim. The insurer hired an investigator. The investigator was enthusiastic, to say the least. The investigator went into the claimant's garage and into the claimant's car. In the court of appeal, the question was, before that court, whether the plaintiff, the claimant, could maintain a claim for emotional distress against the insurance company. And the court didn't buy it. But the court of appeal looked and said, plaintiff, I'm looking at your complaint here, and what you've alleged is a trespass. You've alleged a tort here. And so the immunities that State Farm asserts aside, because they don't apply, they don't exist, what the appellate court did in Teague was essentially encourage the plaintiff to go back to the superior court and to amend to assert a tort, which is the same sort of thing that the Joneses are doing here. And even beyond that, if you go to the Moratti-Shalal case, the Supreme Court case on this, that the question there was whether a private plaintiff could maintain a cause of action under California's bad faith insurance claims handling statute. And the court said, no, there's no private cause of action, but, but, but, plaintiffs have reserved to them the right to bring common law tort causes of action against insurance companies when they act tortiously. And State Farm acted tortiously here. It didn't have any responsibility for that and didn't manage it properly. And that landslide continued to damage the Joneses' property and the business that the Joneses run on that property. It's responsible the same way as anybody else in the State of California, you, me, anybody in this courtroom. If we trespass, we commit a nuisance, we're negligent, we're responsible. The fact that State Farm's an insurance company doesn't or at least shouldn't make any difference. Go ahead. Well, it should make some difference, at least under California law. Adelman v. Associated International basically said, look, we have serious reservations about extending this liability to insurance companies from non-insurers. And then it goes on to look in that particular case with the homeowners association. Why aren't we in the same situation here? I mean, you keep saying, well, it's a tort, it's negligence, but it's a non-insured, correct? Well, if you look at Mirati Shalal, it reserves to both insureds and non-insureds the ability to bring common law causes of action for tort against an insurance company that acts tortiously. But how do you square that with the Adelman case? I'm more familiar with the Mirati Shalal case. And in Mirati Shalal, I think it's clear that there are common law causes of action that are reserved both to insureds and to non-insureds. But do you have a conflict in California law here? Potentially we do, I think. Because when they're basically saying, look, if we open up Pandora's Box to all the non-insureds for everything and consequential damages, we've basically changed the whole notion of insurance, which is a contract situation. So I'm not sure how you can square that with a lot of those California cases that kind of do draw the line on non-insureds. But we're talking about outside of the contract. We're talking about an insurance company. Well, they always are. That's how non-insureds end up being in there. They're not in the contract. Well, that's right. But an insurance company, there's an example that we have in our reply brief that if State Farm had sent its adjuster out to adjust a claim and gotten an auto accident, because that adjuster is acting in a claim-sanding capacity, it's immune from the tort of causing an auto accident, I think we've got to be careful about how we how much we limit an insurer's responsibility to a contract when insurance companies act in ways outside of the contract or can and can cause injury to other folks. And this is a good example of that, where an insurance company declined any responsibility for the landslide and did something anyway. It had obligations to a non-negotiator. I'm not sure about the car example, because that would be in the course of employment that the person has is having the car accident. So I'm not sure that that really changes the calculus that much. So you're basically saying that any time there's a tort, even if you're a non-insured, that you can recover? Yes. I mean, is that the principle that we would take from your argument? Yes, Your Honor. If I mismanaged the landslide or you mismanaged the landslide or J.C. Penny mismanaged the landslide, we'd all be responsible for it. I think it's a mistake to look at State Farm as an insurance company here. It is, but it took on a non-insurance capacity because it didn't have any obligation to do what it did. And then that's why you don't give any credit to the fact that you might want to mitigate what your damages are if you were the insurance company? The responsibility for repairing that landslide, according to State Farm, was the insurer's. Again, State Farm jumped in. It's like the Alcoraz case where a property owner mowed a neighboring piece of property. A tenant of the property owner that didn't own the property was walking and fell through a sewer or injured himself on a sewer and sued the person who was mowing the grass but didn't own the property. And the property — the non-property owner came in and said, I don't own that property. I can't be responsible for it. And the Supreme Court said, no, you exercised sufficient control over that property by mowing the grass that, at least in theory, we're going to allow the plaintiff to go forward because you exercised control. You volunteered when you began to take care of that property. It's the same thing here. You have somebody acting as a volunteer that assumed liability to act responsibly and did not. So your whole theory of the theory, at least the negligence claim, I guess, is that State Farm undertook responsibility for managing the slide or controlling the damage to the slide and did it in a negligent way. That's what the complaint alleges. By taking over control, they essentially assumed a duty of care to the Joneses. That's correct. Is that right? Is that what the theory is? It doesn't make any — in that view, it doesn't make any difference. I guess you could separate it out from the background, which is that State Farm gets involved because they have an insurance relationship with the uphill landowners. Yes. Is that right? Yes, it is. And it's like the Sherpin case where the downhill property owner sued the uphill property owner's soils engineer because the soil engineer, according to the downhill property owner, did a bad job. The landslide continued, continued to injure the downhill property owner. The Superior Court granted it Murr. And the appellate court reversed on both the nuisance and the negligence causes of action, finding that the downhill property owner had a cause of action for negligence and nuisance against the soils engineer that allegedly mishandled the landslide. If you swap State Farm out — In that case, the whole principle of third-party beneficiary was at play, and that was actually alleged in the complaint. To ascribe to your position, do we have to go to the third-party beneficiary like they did in Sherpin? I didn't read Sherpin that way, Your Honor. I think that the negligence and the nuisance cause of action were based on nuisance that the uphill owner's soil engineer, by virtue of not rectifying the landslide, interfered with the quiet enjoyment of the downhill property owner's property. And with respect to negligence, that there was a foreseeable duty that if you manage a landslide on uphill property, you have a foreseeable duty in negligence and tort to protect against damage to a downhill property owner. Same thing here. If you swap State Farm out for the soils engineer, it's the same case. So let me ask you this, just procedurally. The district court dismissed this case on the basis of Teague. Is that right? Yes, Your Honor. And did the district court — was there a claim that you failed to state a nuisance claim, you failed to state a negligence claim, and you failed to state a — I forget what the third claim was. But, you know, the essential elements of those claims. No. No. It was — as I read the district court's decision, it was that under Teague, because we had an insurer involved, that the Joneses had to allege that somehow State Farm was acting outside of the capacity of an insurance company. That's what I understood to be driving the district court's decision to dismiss all the Joneses' complaint. So State Farm — I mean, if you put that aside for a moment, State Farm doesn't really contest that these claims as alleged would state a — you know, whether you can prove them or not is a whole other thing. But they do state a claim for negligence, state a claim for — I think the challenges were mainly they challenged splitting a cause of action and a whole lot of other things. One seemed to be an immunity under Insurance Code Section 11580, another under Insurance Code Section 79003. But I think the thrust of State Farm's argument, my colleague will inform us all, was that Teague required more than what the Joneses had alleged. That for the Joneses' complaint to survive, that the Joneses had to allege that State Farm was acting outside of the purview of — I mean, I'm just trying to figure out what it is we need to decide. That is, we need to decide that Teague doesn't foreclose these claims? Is that what we need to decide, whether Teague forecloses these claims? Well, I think there are two issues. One is whether the Joneses have alleged negligence, nuisance, and trespass causes of action. And they have. And I think Sherpin takes care of negligence and nuisance. Teague takes care of trespass. It's clear. Then the second issue is whether these immunities that State Farm has raised — that has raised, based mainly on California statutory law, 79003 and 11580, whether those bar claims. But under 79003, the Joneses aren't alleging a bad-faith-claims-handling case. What they're alleging is that the Hill came down. Okay. I got it.  Thank you. Thank you. Good morning. May it please the Court, my name is Todd Roberts. I represent State Farm General Insurance Company. The narrow issue presented on appeal from our perspective is whether third-party claimants who have sued persons insured under a policy of liability insurance may also sue the liability insurer of those defendants directly for the alleged harm in connection with the defense of the underlying lawsuit when it is discharging obligations under a policy of insurance and exercising duties owed exclusively to its insureds. And for a variety of reasons, the answer must be no because, one, the duties are owed exclusively by State Farm to its insureds. To hold otherwise would put the insurance company in a conflict of interest with its insureds in defending the very lawsuit it was contracting to provide coverage for, would encourage multiple lawsuits. It would discourage insurance companies from assisting insureds to mitigate ongoing damage in a broad variety of lawsuits. Why don't we start there? Because I just kind of want to understand the base, kind of what took place here. Judge Moye initially asked whether or not there was a reservation of rights with respect to the appeal property owners when they, I guess, submitted the claim to State Farm. Is there a reservation of rights? There typically would be a reservation. Is there a reservation of rights or not? I believe there is a reservation of rights, but there is nothing in the record one way or the other. Okay. That's fine. That's fine. I understand that. Now, so the allegation in the complaint is that State Farm stepped in to what I assumed, having read the complaint, was that State Farm stepped in to mitigate any future damages that the Joneses may recover against the appeal property owners. And that's the allegation that State Farm stepped in to mitigate those damages. In doing so, the complaint alleges that State Farm assumed some control over that mitigation and did it in a negligent way. Why does Teague foreclose that claim? Well, first of all, Teague forecloses it for, I think, different reasons. But if I could take a step back and talk about the roles and responsibilities of the insurance company under the liability provisions, it's obligated to provide a defense to the insured when there is property damage caused by an accident. And that's why State Farm stepped in and they hired the McNamara Law Firm. The McNamara Law Firm asserts an answer to the complaint. And State Farm's role is not as State Farm Construction Company or State Farm Geotechnical Engineer. It is State Farm Insurance Company. Its role is to pay benefits due under the policy and pay money to people who are expert in their field. That's the McNamara Law Firm. But the insurance company also will step in to help mitigate future damages. Exactly. And in conjunction with the defense of the GWO-LIN parties here, if the McNamara firm hires geotechnical engineers and consultants in connection with the defense, State Farm is allowed to rely on those professionals. State Farm's role is to pay money. State Farm is not controlling anything. This is creative lawyering in the way that they have drafted the complaint. And in conducting the defense of the case, State Farm's obligations are in conflict with the Joneses. They're trying to defeat the complaint and they're trying to benefit the GWO-LINs in this circumstance by mitigating their damage. And it's certainly within the discretion of the insurance company to assist the insured. And I think about this case when I was preparing in the context of the tilting, sinking, 58-story high-rise luxury condominium complex a mile away from here, the Millennium Tower. It would be a disastrous consequence if the result was that the liability insurance companies for the developer, the contractor, the subcontractors, are now exposed to absolute liability without regard to policy limits because they hired geotechnical engineers and structural engineers to try to fix a problem. So if they make that worse, their obligation creates greater damages to its insureds. And the way in California that a claim can be asserted by an underlying plaintiff. Well, go ahead. On that unfortunate condominium situation down the street, if the insurance company then hires someone who causes further, it's sinking, and that was why everybody's called in in the first place, but if the insurance company tries to mitigate that and hire somebody and now there's further degradation and sinking and shifting, you're saying there's no liability. There would be no liability. Because it's a third party. My apologies. There would be no liability to the insurance company who hired it, but there might be liability for the geotechnical engineer if they committed negligence in that. And let me point your attention to the merit versus reserve insurance company case because I think it's probably the most analogous situation that we have to ours. In merit versus reserve, it was a failure to settle the case. The plaintiff in merit actually took an assignment of rights, which is one of the very, very narrow exceptions in California where an underlying plaintiff may sue an insurance company. And in that case, one of the claims that was assigned was a malpractice complaint against the insurance company for the incompetence of the lawyer in actually conducting the defense of that case. So insurance company hires professional, professional commits malpractice in the defense of the case, and that's the claim that is presented. In that case, the court of appeals said that from the standpoint of the insurance company, the professional it hired is an independent contractor. There is no vicarious liability. However, if the insurance company had hired an incompetent lawyer who had no business defending the case and was unqualified to do it, there might be a direct claim by the insured that could be assigned. And I think one thing that is very important to note that we haven't talked about is among the only ways that a plaintiff, an underlying plaintiff, can secure any rights against an insurance company is a final judgment. State Farm's role is to defend the GWO lends. It did just that, and it also settled the case on behalf of the GWO lends. There is no ability on the part of the Joneses to sue State Farm directly. Even under the Morardi-Shalal decision. I wanted to ask you about that because that was talked about quite a bit. So in Morardi-Shalal, the case law prior to Morardi-Shalal was Royal Globe, and it recognized that third-party strangers to a contract could avail themselves of statutory rights under insurance code section 790.03. Morardi-Shalal in 1988 abolished the direct liability rule in California for bad faith acts by an insurance company in connection with the handling and adjustment of insurance claims. And even before Morardi-Shalal, the courts recognized that even under Royal Globe, you had to have a final judgment against the insured as an underlying plaintiff to secure any rights at all against the insurance company, and that's not the case here. So what does that language in Morardi-Shalal mean when they say, well, generally you can't do this, but there also is this option for imposing civil damages against the insurance company in, and then it lists fraud and emotional distress and other things. So is that a carve-out to the rule you're talking about? So the only carve-out that I know that's been recognized in favor of an insured is Zang v. Superior Court, where they allowed an insured to bring a false advertising claim under the unfair competition law. But what Mr. Jacobus is asking you to do is extend California law beyond that which it presently exists. There is no conflict in the law. The only exceptions in California that are recognized where an underlying plaintiff may bring a suit directly against an insurance company are under Insurance Code Section 11-580. That requires a plaintiff to secure a final judgment, become a judgment creditor, have a claim within the scope of the insurance policy, and at that point, its third-party beneficiary rights kick in. But that's if and only if there's a judgment in their favor. The second is they can secure the breach of implied covenant, the tort claim, by an assignment of rights from the insured. Here there has never been an assignment. Right. There's nothing. Let me you said one thing that caught my attention, which is suppose we don't know anything other than what's in the allegations in the complaint. It alleges that State Farm assumed control over the situation resulting from the slides to remediate. And suppose the facts turn out to be that State Farm wanted to do it on the cheap and made some directions about what should be done and directed that that's, you know, get it done. And it turns out that that was completely incompetent. Why couldn't they, why isn't that State a claim? Because the duties under California law are owed exclusively to the insured. And the only way that I can envision that a claim, and forgive me for not wanting to commit my client to, you know, potential damages on hypothetical situations, but if you apply merit versus reserve, the only way that a party such as the Joneses could sue State Farm is if they took the case to judgment, proved that there were damages in excess of the policy, and took the assignment. But here, they didn't do that. They supplemented the case. That strikes me as that would be inconsistent with Mordai Shalom. In what respect? Well, because then you're really basing your claim on it's being driven by the policy itself. Well, the policy is the only reason that State Farm is involved in this at all. And it's the, it is what's defining the rules. How do you explain then what happened in Teague when the California Court of Appeal allowed a trespass action? So Teague is one of the, one of what I would say the third exception, 11580, the assignment. And Teague is the third exception where a third-party plaintiff has been able to state a cause of action against an insurance company. So that would be an exception to the Mordai Shalom decision. But Teague is based on Unruh v. Truck Insurance Exchange. In that case, investigator for an insurance company starts a friendly relationship that turns into a romantic relationship with the person that they're investigating. And not surprisingly, the court said, that is outrageous conduct of the type that no reasonable insurance company should undertake. It's shocking. Same thing with Teague where a brain-injured worker, hypersensitive, known to the insurance company is the subject of an investigation, and the investigator physically trespasses into the person's car and physically trespasses into the person's house. It's criminal conduct. It is so outrageous that the courts say it's outside the scope of the workers' compensation scheme and the exclusive remedy doctrine in workers' compensation, and that situation does not apply to bar the claim because it is outside the scope of what any reasonable insurance company would do. In this circumstance, State Farm is defending its insured and doing exactly what it was obligated to do under the contract. And part and parcel of that defense is to assist the insured in mitigating damages. And I think any suggestion of the contrary is simply creative lawyering. No. There's no statutory statute that grants insurers immunity, right? I don't think immunity is the proper terminology, but the cases have flowed from the absence of any duty because they're in we're in conflict with the underlying plaintiff. And the courts look at the roles and responsibilities of the insurance company and say that you can't put the carrier and the insured in a conflict of interest relationship in that way. Can I ask? I'm confused by part of your argument early on, and so not to be pedantic here. There's not much time. But under the policy with State Farm, there's a duty to defend and a duty to indemnify in the event that there's liability. Correct. You keep saying that State Farm had a duty to help the insured mitigate their damages. So where's the policy limit come in? Is that over and above the policy limit, or is that an extra step that State Farm takes to go out and manage the slide, which is not a part of their duty to indemnify, and it's not part of the duty to defend, is it? I would say it would be part of the duty to defend to mitigate the harm. It's part of the advancement of an affirmative defense, a failure to mitigate. But the carrier doesn't mitigate the harm. It's the insured that has a duty to mitigate the harm. That's right. But the insurance company assists the insured in doing that by paying the defense lawyer and the geotechnical engineers in that regard. So State Farm is assisting the insured. So the claim, if one exists at all, would be against the GWO lens. State Farm has completely settled that case, and against the geotechnical engineer. And the geotechnical engineer has not been sued. And the geotechnical engineer under Sherman would be the proper party. State Farm is not. In the complaint, we started the whole question, I think, with Judge Malloy asking about a reservation of rights. And you said there probably was one, at least in the complaint. It says that State Farm sent the letter to the GWO lens people and took the position that there was liability policy and no responsibility to repair the landslides. And then they go on to say that they talked about winterization being applied to the available policy limits. So how does all that figure in when there's sort of a disclaimer, we don't have any obligation, but now we've arrived on the scene or we've had our professionals arrive on the scene for this winterization? So this is the difference between first-party coverage, the property coverage, and the third-party liability coverage. And as has been extensively litigated in California, under the first part of the policy, the property coverage, there is no coverage for earth movement. So it was not State Farm's responsibility under the property part of the coverage to repair the slides on the GWO lens property. When it relates to the third-party liability, again, the property damage that we are focusing on is not the property damage of the insured's property, but the property damage being caused to the Joneses. And my point would be that it is well within the discretion of the insurance company to assist its insureds in defeating the claim and minimizing the amount of damages that are sustained, and that's exactly what State Farm did in settling the case. Thank you. Thank you. Do we have any other questions? We went over quite a bit, so why don't we give you two minutes for rebuttal. Very briefly, I want to address the notion that State Farm was helping the insureds mitigate the damages. Even if that were the case, that's outside of the policy responsibilities. And as is alleged from the complaint, if State Farm comes in and makes the situation worse, there has to be a remedy. There has to be a remedy, and that's what the Joneses case is about, that State Farm took on this obligation and didn't do it correctly. The geotechnical person was not sued, is that correct? No. The Merritt case, counsel relied on that quite a bit. I'll point, again, there's an exception, and the exceptions in these cases are important, like in the Moratti's Law case. In Merritt, the court held the insurer, quote, of course remains liable for the negligent performance of its own duties. And so we don't know the extent of the duties. We know that State Farm paid for winterization, but we haven't had discovery. And so the question at the pleading stage is under Twombly and Iqbal whether we've alleged enough to unlock the doors to discovery and find out exactly what it is that State Farm did, and the Joneses should be allowed that opportunity to do so. And then finally, the notion that the only way that you can get to an insurance company is to have a judgment against the insured under Section 11580. Well, the Joneses aren't asserting an 11580 claim. They're not asserting a claim for any coverage whatsoever under the policy. What they are asserting is a claim for the damages caused by the negligent maintenance of the landslide. In Teague itself, there was no judgment. The plaintiff there didn't have any judgment against the insurance company and was allowed to proceed nevertheless. The 11580 argument is a red herring. And with that, I want to thank the court for its time, and we're asking, please, for the case to be remanded to the district court for further proceedings on the merits. Thank you. Thank you. Thank both counsel for this very interesting insurance case. The case just argued is now submitted, Jones v. State Farm General Insurance Company, and we're adjourned for the morning. Thank you.
judges: McKEOWN, PAEZ, Molloy